## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-21769

DS HEALTHCARE GROUP, INC.
and MEDITAGO HOLDINGS LLC,

      Plaintiffs

v.

ARICOL, TOV a/k/a
ARICOL, a/k/a ARICOL LLC
a/k/a ARICOL GROUP a/k/a
ARICOL GROUP OF COMPANIES;
ARICOL.COM;
DIMITRI POPOV;
GENERAL_KING; LUX_DEALS;
WEST SIDE TRADING; WHIMS
OF BEAUTY; MSDESIGNS;
SAITO'S STORE; ZAQUE SALES;
and QUALITY SOURCED
PRODUCTS; Each an
Individual, Partnership,
Business Entity, or Unincorporated
Association

      Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, DS HEALTHCARE GROUP, INC. ("DS Healthcare") and MEDITAGO

HOLDINGS, LLC ("MEDITAGO") (collectively, "Plaintiffs"), by and through undersigned

counsel, hereby sue Defendants, the individuals, partnerships, business entities, and

unincorporated associations identified in the caption, which are set forth on Schedule "A" hereto

(collectively "Defendants"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark infringement, common law unfair competition, common law trademark infringement pursuant to 15 U.S.C. §§1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), violation of the Florida Deceptive and Unfair Trade Practices Act, Fraud in the Inducement and for a declaratory judgment pursuant to Section 86.011, et seq. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331 and 1338.  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332, and the matter in controversy exceeds the sum of or value of $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, including through solicitation in the State of Florida and including through Internet based e-commerce stores accessible in Florida.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants are, upon information and belief, aliens engaged in activities and causing harm within this district by engaging in unfair trade practices in this district, by advertising, offering to sell, selling and/or shopping infringing products into this district, and because a substantial part of the events giving rise to the claims occurred in this district.

**THE PLAINTIFFS**

4.     Plaintiff MEDITAGO is a Delaware limited liability company with its principal place of business located in Miami, Florida. MEDITAGO is the owner of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive DS Laboratories, Revita, and Spectral trademarks.

5.     Plaintiff DS HEALTHCARE GROUP, INC. is a Florida corporation with its principal place of business in Miami, Florida.  DS HEALTHCARE GROUP, INC. manufactures, sells and distributes haircare, skincare, and cosmetic products (the "Products") out of its South Florida headquarters, under exclusive license from Plaintiff MEDITAGO to commercialize MEDITAGO trademarks throughout various territories around the globe.

6.     Plaintiffs' trademarked Products are sold through various channels of trade within the State of Florida, including this district.

7.     Defendants, through the sale and offer to sell infringing versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and thereby causing Plaintiffs harm within this jurisdiction.

**THE DEFENDANTS**

8.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district, through the operation of Internet e-commerce stores via the online marketplace website Amazon.com.

9.      Defendants are past and present controlling forces behind the sale of products bearing infringements of Plaintiffs' trademarks as described herein.

10.      Defendants ARICOL, TOV a/k/a  ARICOL, a/k/a ARICOL LLC a/k/a ARICOL GROUP a/k/a ARICOL GROUP OF COMPANIES; ARICOL.COM and DIMITRI POPOV (the "ARICOL Defendants") directly engage in unfair competition with Plaintiffs by deceivingly misrepresenting to the Plaintiffs that the Products that the ARICOL Defendants are acquiring are destined exclusively for Ukraine, when the ARICOL Defendants in fact intend to divert the Products for sales on the Internet in the United States. Based on knowledge and belief, defendant GENERAL_KING is directly or indirectly associated with the ARICOL Defendants and similarly engages in trademark infringement and unfair competition by selling the Products obtained by the ARICOL Defendants through deceit on the Internet in the United States. The ARICOL Defendants and Defendant GENERAL_KING shall collectively be referred to as the "Ukraine Defendants" herein.

11.      Plaintiffs' Products that are destined for Europe are materially different in various respects from Products that are destined for the United States and are therefore infringing products (the "Infringing Products").  Davidoff & Cie, SA v. PLD International Corp., 263 F.3d 1297, 1302 (11th Cir. 2001) ("[A] materially different product is not genuine and therefore its unauthorized sale constitutes trademark infringement.").

12.      The Ukraine Defendants and the other Defendants named herein, although they may not be directly associated with the Ukraine Defendants, are collectively and jointly and severally selling the Infringing Products on the Internet to consumers within the United States and this district, including through Amazon Seller IDs as set out in Schedule "A" (the "Seller IDs").

13.     Defendants have registered, established or purchased, and maintain the Seller IDs. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet marketplace websites where they sell, including Amazon.com, during the registration or maintenance process related to their respective seller IDs.  Upon information and belief, some Defendants have registered or maintained the Seller IDs for the sole purpose of engaging in infringing activities.

14.     Upon information and belief, the defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods infringing upon one or more of the Plaintiffs' trademarks unless preliminarily and permanently enjoined.

15.     Defendants use their Internet-based business in order to infringe the intellectual property rights of Plaintiffs.

16.     Defendants' Seller IDs, associated seller accounts and any other alias seller identification names used in connection with the sale of infringing goods bearing one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to Plaintiffs.

17.     Further, Defendants are using Plaintiffs' famous names and/or trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

18.     Upon information and belief, Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling Infringing Products to consumers within the United States and this district through Internet-based e-commerce stores.

## COMMON ALLEGATIONS OF FACT

13.     Plaintiff MEDITAGO is the owner of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive DS Laboratories, Revita, and Spectral trademarks, which are generally marketed under the distinctive "DS Laboratories" label.

14.     MEDITAGO is the owner of multiple trademark registrations as reflected in the United States Patent and Trademark Office ("USPTO") for the "DS Laboratories" trademarks, including the valid registrations identified on Schedule "B" hereto, which include the registered trademarks that are affected by the actions of the Defendants named herein.

15.     Based upon its distribution licenses, Plaintiff DS HEALTHCARE GROUP, INC. has expended significant resources in developing, marketing, advertising, and otherwise promoting its brand and trademarks.

16.     Plaintiffs have carefully monitored and policed the use of their trademarks and have never assigned or licensed their trademarks to any Defendant in this matter.

17.     During the relevant time hereto, Defendants DIMITRI POPOV ("POPOV") and ARICOL held themselves out to Plaintiff as Ukraine distributors and thereby procured Plaintiffs' Products under the pretenses that such Products were destined for distribution and sales in Ukraine, exclusively.

18.     In late April 2021, Plaintiff discovered that the Products are not being purchased for distribution in Ukraine.  Instead, the Defendants, jointly and severally, are promoting, selling, offering for sale and distributing the Infringing Products within the United States without the authorization of Plaintiffs, through various Internet based e-commerce stores including, upon information and belief, the following Amazon e-commerce Seller IDs: GENERAL_KING, LUX_DEALS; WEST SIDE TRADING; WHIMS OF BEAUTY; MSDESIGNS; SAITO'S

STORE; ZAQUE SALES and QUALITY SOURCED PRODUCTS (the "Seller IDs").  Based on Plaintiff's investigation and review of the identifying product lot numbers, the ARICOL Defendants are, directly or indirectly, selling the products obtained through their deception of Plaintiff via the "GENERAL_KING" Amazon Seller ID on the Internet in the United States. The origin of the Infringing Products sold through the remaining Seller IDs is unknown.

19.     Examples of the Infringing Product listings on Amazon.com by the ARICOL Defendants, directly or indirectly, via the Seller ID "GENERAL_KING" are attached as Composite Exhibit "2" hereto. Examples of the Infringing Product listings on Amazon.com by LUX_DEALS are attached as Composite Exhibit "3" hereto. Examples of the Infringing Product listings on Amazon.com by MSDESIGNS are attached as Composite Exhibit "4" hereto. Examples of the Infringing Product listings on Amazon.com by QUALITY SOURCED PRODUCTS are attached as Composite Exhibit "5" hereto. Examples of the Infringing Product listings on Amazon.com by WHIMS OF BEAUTY are attached as Composite Exhibit "6" hereto. Examples of the Infringing Product listings on Amazon.com by ZAQUE SALES are attached as Composite Exhibit "7" hereto. Examples of the Infringing Product listings on Amazon.com by WEST SIDE TRADING are attached as Composite Exhibit "8" hereto. Examples of the Infringing Product listings on Amazon.com by SAITO'S STORE are attached as Composite Exhibit "9" hereto.

20.     Plaintiffs' Products that are destined for Europe are materially different in various respects from Products that are destined for the United States.  For instance, Plaintiffs' Products that are destined for Europe have different labels, in different languages, setting out different information and legally required indicators.  Further, Products that are destined for export to Europe contain ingredients that are different from those that are (or legally can be) sold to

American consumers based upon regulatory restrictions.  Finally, Products that are intended for export to Europe are packaged for retail sales rather than online sales.  Consequently, a U.S. consumer purchasing Infringing Product from a Defendant Seller ID would receive product with information, labels, and even ingredients that are not meant for U.S. consumers, and would receive product that is not packaged for online sale in the manner that Plaintiff DS HEALTHCARE GROUP, INC. packages its e-commerce products. Some of the differences between the Plaintiff's U.S. product and European product are highlighted on the example diagrams attached as composite Exhibit "10" hereto.

21.     As detailed on the attached diagrams, the European products that are being sold to United States consumers by the Defendants have different active ingredients, combinations, packaging and labels, which Plaintiff's customers expect when they buy DS HEALTHCARE products. As a result, consumers purchasing the products from the Defendants are likely to be confused, eroding consumer goodwill towards the products.

22.     The Defendants, through the sale and offer to sell infringing versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.  The Plaintiffs are seeking injunctive and other equitable relief as a result of the actions of the Defendants.  A *Verified Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Memorandum of Law in Support Thereof* is being filed contemporaneously with this *Complaint*.

23.     All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

## **GENERAL ALLEGATIONS**

24.     Plaintiff MEDITAGO is the owner of multiple trademark registrations, including the valid trademark registrations identified on Schedule "B" hereto, issued by the United States Patent and Trademark Office (collectively, the "Marks"). True and correct copies of the Certificates of Registration for the Marks are attached as Composite Exhibit "1" hereto.

25.     The Marks have been used in interstate commerce to identify and distinguish Plaintiffs' products for an extended period of time and serve as a symbol of Plaintiffs' quality, reputation and goodwill. The Marks are well-known and famous and have been for many years. Indeed, Plaintiffs have expended substantial time, money and other resources developing, advertising and otherwise promoting the Marks. The Plaintiff's Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

26.     Plaintiff has extensively used, advertised, and promoted the Marks in the United States and abroad in association with the sale of quality products.

27.     The Plaintiff's Marks have achieved secondary meaning as identifiers of quality goods as a result of Plaintiff's advertisement, promotion, and sale of such goods thereunder.

28.     As a result of Plaintiff's efforts, members of the public readily identify merchandise bearing or sold under the Marks as being quality products.

29.     ARICOL and its principal, POPOV, hold themselves out as experienced and well-connected distributors of various products throughout Ukraine.

30.     In or about August of 2018, POPOV contacted the Plaintiff, seeking to become Plaintiff's exclusive distributor throughout Ukraine.

31.     In various communications, POPOV made representations to the Plaintiff that POPOV had established the promised presence of Plaintiff's Products within the Ukraine, and

that POPOV and ARICOL were successfully distributing Plaintiff's Product through multiple pharmacies and other points of sale in Ukraine.

32.     On August 27, 2018, Defendant POPOV emailed the Plaintiff confirming that the Defendant POPOV would be "acting exclusively in Ukraine[.]"  A true and correct copy of the email is attached as Exhibit "11" hereto.

33.     In the same August 27, 2018 email, Defendant POPOV represented to Plaintiff that POPOV was acting on behalf of "ARICOL LLC." Based on knowledge and belief, "ARICOL LLC" is not an entity under Defendant POPOV's control or under which Defendant POPOV operates.  See Exhibit 11.

34.     On June 4, 2019, Defendant POPOV emailed the Plaintiff, falsely indicating that sales in Ukraine are progressing and that the focus would initially cover the cities of Odesa and Kyiv.  A true and correct copy of the email is attached as Exhibit "12" hereto.

35.     In September of 2019, Defendant POPOV reiterated the steady growth of the Ukraine market for Plaintiff's Products, falsely indicating that the Defendant was successfully placing Plaintiff's Products in retail locations and beauty salons.

36.     In the fall of 2020, Plaintiff began to discover Products that had been sold to Defendant POPOV being sold online at Amazon.com by the Ukraine Defendants.

37.     The Products being sold on Amazon.com that originated from sales made to POPOV were being marketed outside of Ukraine, including inside this jurisdiction, and at lower prices than Plaintiff's authorized retail prices.

38.     In October of 2020, Plaintiff requested that POPOV provide evidence that the Products are being sold in Ukraine, and POPOV was unable to provide any such evidence. Plaintiff sent an agent based in Ukraine to certain points of sale in which POPOV claimed to

distribute Plaintiff's product, and confirmed that the points of sale did not in fact sell Plaintiff's product.

39.     Rather than conduct sales in Ukraine as POPOV represented to the Plaintiff, POPOV caused Plaintiff's Products to sell through Amazon.com by the Ukraine Defendants, including through the Seller IDs.

40.     Additionally, the remaining Defendants named herein are obtaining Infringing Products that are destined for European markets through unknown means and selling them through Amazon.com, including through the Seller IDs.

## CAUSES OF ACTION

### COUNT I
### TRADEMARK INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT
### (15 U.S.C. § 1114)

41.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

42.     This is an action for trademark infringement against all Defendants based on their use and unauthorized promotion, advertisement, distribution, offer for sale and sale of products bearing Plaintiff's Marks in commerce, which products are materially different than those sold by Plaintiff in the United States.

43.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing products that infringe upon one or more of Plaintiff's Marks. Defendants are continuously infringing and inducing others to infringe the Marks by using one or more of them to advertise, promote, offer to sell, and/or sell infringing products.

44.     Defendants' concurrent infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' infringing goods.

45.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

46.     Defendants' above-described illegal actions constitute infringement of Plaintiff's Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114. Davidoff & Cie, SA v. PLD International Corp., 263 F.3d 1297, 1302 (11th Cir. 2001) ("[A] materially different product is not genuine and therefore its unauthorized sale constitutes trademark infringement.").

47.     Plaintiffs' have suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II
## COMMON LAW UNFAIR COMPETITION

48.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

49.     This is an action against all Defendants based on their unauthorized promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that infringe upon Plaintiff's Marks in violation of Florida's common law of unfair competition.

50.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing one or more of Plaintiff's Marks that constitute

trademark infringement based on the fact that the products are materially different than those offered and sold by Plaintiff in the United States. Defendants are also using infringements of one or more of the Plaintiff's Marks to unfairly compete with Plaintiffs and others for (i) space in search engine results across an array of search terms and/or (ii) visibility on the Internet.

51.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Plaintiff's Marks.

52.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**

53.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

54.     This is an action for common law trademark infringement against all Defendants based on their unauthorized promotion, advertisement, offering for sale, and sale of goods bearing one or more of the Plaintiff's Marks that are materially different than the products offered and sold by Plaintiff within the United States. Plaintiffs are the owners of all common law rights in and to the Marks.

55.     Defendants' infringing activities are likely to cause and are actually causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' infringing goods bearing Plaintiff's Mark.

56.     Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

## COUNT IV
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUPTA") AGAINST POPOV and ARICOL

57.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

58.     Defendants POPOV and ARICOL engaged in deceptive practices under FDUPTA by misrepresenting to Plaintiff that the Defendants POPOV and ARICOL would exclusively sell product in Ukraine, in order to induce Plaintiff to supply POPOV and ARICOL with product to sell throughout channels other than Ukraine without Plaintiff's authorization.  *See* e.g., Department of Legal Affairs v. Father & Son Moving & Storage, 643 So.2d 22, 22-23 (Fla. 4th DCA 1994).

59.     As a direct, proximate and foreseeable result of Defendants' actions, DS HEALTHCARE GROUP, INC. has suffered substantial damages.

60.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and the Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT V
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUPTA") AGAINST THE UKRAINE DEFENDANTS

61.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

62.     The Ukraine Defendants engaged in deceptive practices under FDUPTA by facilitating a mechanism whereby Defendants POPOV and ARICOL would obtain Plaintiff's unauthorized product to sell to U.S. consumers without Plaintiff's approval.  *See* e.g.,

Department of Legal Affairs v. Father & Son Moving & Storage, 643 So.2d 22, 22-23 (Fla. 4th DCA  1994).

63.     As a direct, proximate and foreseeable result of the Ukraine Defendants' actions, DS HEALTHCARE GROUP, INC. has suffered substantial damages.

64.     Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and the Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT VI**
**FRAUD IN THE INDUCEMENT AGAINST POPOV AND ARICOL**

65.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

66.     During the discussions leading up to ARICOL's purchase of Plaintiffs' Products, Defendant POPOV made the following express representations of material fact: (1) that POPOV and ARICOL experienced and well-connected distributors of various products throughout Ukraine; (2) that they were acquiring Plaintiff's Products to sell exclusively in Ukraine, and that POPOV and ARICOL would be acting exclusively in Ukraine; (3) that they would establish a presence of Plaintiffs' Products in Ukraine; (4) that they did in fact establish the promised presence of Plaintiffs' Products in Ukraine; (5) that sales in Ukraine are progressing and that the focus would initially cover the cities of Odesa and Kyiv; (6) that POPOV and ARICOL were successfully distributing Plaintiffs' Products through multiple pharmacies and other points of sale in Ukraine; and (7) that there was steady growth of the Ukraine market for Plaintiffs' Products, falsely indicating that the Defendants were successfully placing Plaintiffs' Products in retail locations and beauty salons.

67.     The above representations were made on or about the time of purchase of Plaintiffs' Products, and to induce further and continuing purchases of Plaintiffs' Products.

68.     The representations were false, and POPOV knew that these representations were false when he made them.

69.     POPOV's intention in making these false representations was to induce Plaintiff to sell Products to POPOV and ARICOL so that they can divert the Products for sales on the Internet in the United States.

70.      Based on those false representations, Plaintiff agreed to sell Products to POPOV and ARICOL.

71.     POPOV and ARICOL then sold and offered to sell the Products on the Internet in the United States, undercutting the Plaintiffs' prices for those products, thereby causing millions of dollars of lost profits.

## COUNT VII
## DECLARATORY JUDGEMENT

72.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 40 hereof as if fully set forth herein.

73.     This is an action by Plaintiffs for a declaratory judgment pursuant to Section 86.011, et seq., Florida Statutes.

74.     On or about April 5, 2021, Defendants POPOV and ARICOL placed an order for Plaintiff's Products and, based on information and belief, caused a payment by an unknown party in the amount of $148,000.00 to be made to Plaintiff DS HEALTHCARE GROUP, INC.

75.     The payment was made by an unknown entity that is not ARICOL or the other Defendants.

76.     Plaintiffs subsequently discovered that Defendants POPOV and ARICOL fraudulently induced Plaintiffs to sell Products to them by representing that the Products were destined for sale exclusively in Ukraine, but instead, Defendants had been diverting the Products for sale on the Internet in the United States without Plaintiff's authorization.

77.     Plaintiffs' Products that are destined for Europe are materially different in various respects from Products that are destined for the United States.  For instance, Plaintiffs' Products that are destined for Europe have different labels, in different languages, setting out different information and legally required indicators.  Further, Products that are destined for export to Europe contain ingredients that are different from those that are (or legally can be) sold to American consumers based upon regulatory restrictions.  Finally, Products that are intended for export to Europe are packaged for retail sales rather than online sales.  Consequently, a U.S. consumer purchasing Infringing Product from a Defendant Seller ID would receive product with information, labels, and even ingredients that are not meant for U.S. consumers, and would receive product that is not packaged for online sale in the manner that Plaintiff DS HEALTHCARE GROUP, INC. packages its e-commerce products.

78.     Because the sale of the Products Defendants POPOV and ARICOL intended to purchase would violate Plaintiff's intellectual property rights, and also violate the applicable United States restrictions on ingredients and packaging requirements, Plaintiffs withheld the Products and refused to deliver them to Defendants POPOV and ARICOL.

79.     Plaintiff is presently retaining the $148,000 purchase amount received by Plaintiff for the purchase of said products.

80.     Plaintiff requests a declaration and determination as to the source of the funds.

81.     Plaintiff further requests a declaration that Plaintiff is entitled to retain the funds because Defendants POPOV and ARICOL, through their unlawful infringing and fraudulent activities, have caused significant damages to Plaintiffs far in excess of the amount currently being retained. Additionally, Plaintiff is doubtful that the funds delivered are legitimate funds of the Defendants, as the funds were wired from an unknown or untrustworthy source.

82.     There is a bona fide, actual and present need for a judicial declaration as to the source of the funds and that Plaintiff DS HEALTHCARE GROUP, INC. is entitled to retain the funds. Alternatively, Plaintiff is willing to deposit the funds into the Court's Registry pending this Court's adjudication of the causes of action raised in this Complaint.

83.     The declaration sought deals with a present, ascertained set of facts and present controversy concerning that set of facts.

84.     The rights of Plaintiff DS HEALTHCARE GROUP, INC. are dependent upon the aforementioned set of facts or the law applicable to those facts.

85.     The parties have an actual, present, adverse and antagonistic interest in the subject matter.

86.     The relief sought herein is not merely the giving of legal advice by the court or the satisfaction of mere curiosity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs DS Healthcare Group, Inc. and Meditago Holdings LLC demand judgment on all counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

    a.  Entry of temporary restraining order, as well as preliminary and permanent
        injunction, enjoining all Defendants, their agents, representatives, servants,

employees and all those acting in concert or participation therewith, from selling or offering to sell Plaintiff's Products without Plaintiff's authority; from falsely representing to Amazon.com and other Internet e-commerce outlets that Defendants are authorized e-commerce distributors of the Plaintiff; and from otherwise unfairly competing with Plaintiffs.

b. Entry of an order pursuant to 28 U.S.C. 1651(a), The All Writs Act, requiring the Seller IDs and any other alias seller identification names being used or controlled by Defendants to engage in the business of marketing Plaintiff's unauthorized product be disabled by each Defendant and the applicable governing Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including Amazon.com.

c. Entry of an order that, upon Plaintiff's request, any Internet marketplace website operators who are provided with notice of the injunction identify any e-mail address known to be associated with Defendants' respective Seller IDs immediately cease facilitating access to any or all e-commerce stores through which Defendants engage in promotion, offering for sale and/or sale of Plaintiff's unauthorized Products;

d. Entry of an order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to Amazon.com, permanently remove from the multiple platforms any and all listings and associated images of goods bearing Plaintiff's Marks via the e-commerce stores operating under the Seller IDs;

e.  Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators, including Amazon.com, who are provided with notice of the injunction, immediately cease fulfillment of and sequester all Products from each Defendant and surrender those goods to Plaintiff.

f.  Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' unfairly competitive activities.

g.  Entry of judgment for compensatory damages for Defendants' fraudulent activities.

h.  Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to Amazon Payments, Inc. and PayPal, Inc., and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

i.  Entry of an award of pre-judgment interest on the judgment amount.

j.  Entry of a declaratory judgment providing that Plaintiff DS Healthcare Group, Inc. may rightfully retain the funds paid to it.

k.  Entry of an order for any further relief as the Court may deem just and proper.

Dated: May 10, 2021.

Respectfully submitted,

**RECALDE LAW FIRM, P.A.**
*Attorneys for Plaintiffs*
820 W 41st Street, Suite 318
Miami Beach, FL 33140
Ph: 305-792-9100
Fax: 305-517-1407
By:  /s/ Rafael Recalde
Rafael Recalde, Esq.
FBN: 60040
Geremy Klein, Esq.
FBN: 106981
Primary Email:  rafael@recaldelaw.com
Secondary Email: geremy@recaldelaw.com

<u>SCHEDULE "A"</u>

<u>SELLER IDs</u>

GENERAL_KING;

LUX_DEALS;

WEST SIDE TRADING;

WHIMS OF BEAUTY;

MSDESIGNS;

SAITO'S STORE;

ZAQUE SALES;

QUALITY SOURCED PRODUCTS

<u>Schedule B</u>

Schedule of Certain Meditago Holdings LLC Trademarks

| Mark | Serial Number | Registration Number |
|------|---------------|---------------------|
| DS Laboratories | | 3460674, 4758774 |
| Revita | | 3518989 |
| Spectral.DNC | | 3510924 |
| Spectral.RS | | 3776938 |
| DS Labs | | 5200746 |
| Dandrene | | 5476671 |
| Spectral.Lash | 90438045 | |
| Spectral.F7 | 90439996 | |